# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN COIT, | : | |
|     Plaintiff | : | |
| | : | No. 1:18-cv-2273 |
| v. | : | |
| | : | (Judge Kane) |
| LISA SHAW, | : | |
|     Defendant | : | |

## MEMORANDUM

Pro se Plaintiff Kevin Coit, an individual currently confined at the State Correctional Institution Smithfield in Huntingdon, Pennsylvania ("SCI Smithfield"), initiated the above-captioned action by lodging a complaint pursuant to 42 U.S.C. § 1983 on November 27, 2018. (Doc. No. 1.) Plaintiff alleges that on November 25, 2015, while incarcerated at SCI Benner Township, he attempted suicide and was placed in an observation cell. (Id. at 3.) Defendant Shaw, a Registered Nurse, entered the cell and saw that Plaintiff "had a []noose hangin[g] in the vent along with inmates Futrell and Adam Brown." (Id.) Plaintiff contends that Defendant Shaw "only egged Plaintiff and other inmates to end their lives." (Id.) According to Plaintiff, he successfully committed suicide, was dead for approximately five (5) minutes, and was "brought back." (Id.) He was taken to the hospital to be treated for neck and other injuries. (Id.) As relief, Plaintiff seeks damages. (Id. at 4.)

On December 21, 2018, the Court granted Plaintiff leave to proceed in forma pauperis and directed service of his complaint on Defendant Shaw. (Doc. No. 10.) On February 19, 2019, Defendant Shaw filed a motion to dismiss. (Doc. No. 17.) After receiving an extension of time to do so (Doc. Nos. 18, 19), Defendant Shaw filed her brief in support (Doc. No. 20) and a statement of facts (Doc. No. 21) on March 13, 2019.

On April 1, 2019, observing that Defendant Shaw raised the issue of whether Plaintiff exhausted his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment and, by doing so, would consider matters outside the pleadings in its role as factfinder.[1]  (Doc. No. 22.)  The Court provided Defendant Shaw fourteen (14) days to "amend or supplement her brief and statement of material facts to further address whether Plaintiff has exhausted his administrative remedies and present any other materials pertinent to the issue that are not currently before the Court."  (Id.)  The Court further noted that Plaintiff should file a brief in opposition addressing the issue of administrative exhaustion, as well as a statement of material facts specifically responding to Defendant Shaw's statement, within twenty-one (21) days from the date that Defendant Shaw filed any amended or supplemental materials.  (Id.)

Defendant Shaw did not file amended or supplemental materials regarding administrative exhaustion within the fourteen (14)-day period provided by the Court.  On April 19, 2019, Plaintiff filed a brief in opposition to Defendant Shaw's motion (Doc. No. 23), as well as a motion to appoint counsel (Doc. No. 24), and a declaration in support of his motion to appoint counsel (Doc. No. 25).  After receiving an extension of time (Doc. Nos. 26, 27), Defendant Shaw filed a reply brief on May 17, 2019 (Doc. No. 28).  Accordingly, Defendant Shaw's motion to dismiss, which the Court will convert to a motion for summary judgment, is ripe for resolution.

---

[1] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

**I.      BACKGROUND[2]**

The Pennsylvania Department of Corrections ("DOC") "has established an inmate grievance review system to provide prisoners in its custody with a regular procedure to resolve problems or other issues arising during the course of their confinement." (Doc. No. 21 ¶ 1.) This system is set forth in DC-ADM 804. (Id.) Inmates are provided with a copy of the grievance procedure upon intake to the DOC. (Id. ¶ 4.) Moreover, a copy of the procedure "is available on all housing blocks and in the institutional library for inmates to review or request to obtain copies." (Id.) Inmates are encouraged to attempt informal resolution of the issue prior to filing a grievance. (Id. ¶ 2.) Any grievance must be submitted in writing to the Facility Grievance Coordinator, using the grievance form that is available on all housing units or blocks. (Id. ¶¶ 2, 6.) Copies of the grievance form are also available in the law libraries. (Id. ¶ 6.)

A submitted grievance must include a statement of relevant facts as well as the date, approximate time, and location of the events giving rise to the grievance. (Id. ¶ 7.) The grievance must not exceed two (2) pages and should also identify the individuals involved in the

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the background herein is derived from Defendant Shaw's Rule 56.1 statement of material facts. (Doc. No. 21.) Plaintiff has failed to file a response to Defendant Shaw's statement of material facts in compliance with M.D. Pa. L.R. 56.1. Accordingly, the Court deems the facts set forth by Defendant Shaw to be undisputed. See M.D. Pa. L.R. 56. 1; Fed. R. Civ. P. 56(e)(2); Bowman v. Mazur, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa. Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1.").

3

events. (Id.) The inmate is also "required to 'specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.'" (Id.) Finally, the inmate must include a request for specific relief, such as compensation. (Id.)

The initial grievance must be submitted to the Facility Grievance Coordinator within fifteen (15) days of the events giving rise to the claim. (Id. ¶ 9.) The Facility Grievance Coordinator assigns a grievance tracking number to every grievance upon receipt and enters every grievance into the Automated Inmate Grievance Tracking System. (Id. ¶ 10.)

If an inmate is dissatisfied with the initial review response or grievance rejection, he may appeal to the Facility Manager (Superintendent) in writing within fifteen (15) working days from the date of the initial review response or grievance rejection. (Id. ¶ 11.) The appeal must include the reasons for the appeal, and "[o]nly an issue that was raised for Initial Review, determination of frivolousness, rejection and/or placement on grievance restriction may be appealed." (Id. ¶ 12.) The Facility Manager then provides a written response to the inmate. (Id. ¶ 13.)

An inmate who is dissatisfied with the Facility Manager's response may submit an Inmate Appeal to Final Review, within fifteen (15) working days from the date of the response, to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Id. ¶ 14.) Only issues raised in both the original grievance and the appeal to the Facility Manager may be appealed to SOIGA. (Id. ¶ 15.) Moreover, the inmate must include copies of the initial grievance, the initial review response, the appeal to the Facility Manager, and the Facility Manager's response. (Id. ¶ 16.) SOIGA may, inter alia, uphold the response, uphold the inmate's argument, dismiss the grievance, uphold in part and deny in part, or remand the appeal to the facility. (Id. ¶ 17.) When an appeal is remanded to a facility, "notification is provided to both the inmate and facility, and the facility provides a revised response to the inmate." (Id. ¶ 18.) An inmate who is dissatisfied

with the revised response may appeal that response to final review within fifteen (15) working days of the date of the response. (Id. ¶ 19.)

On November 25, 2015, Plaintiff submitted Grievance No. 605363 regarding his purported suicide attempt that same day. (Id. ¶ 20.) On January 25, 2016, the Facility Grievance Coordinator denied his grievance. (Id. ¶ 21.) Plaintiff appealed this decision to the Facility Manager on June 7, 2016. (Id. ¶ 22.) On June 28, 2016, the Facility Manager dismissed Plaintiff's appeal as untimely because it was not filed within fifteen (15) working days from the date of the initial review response. (Id.) On July 1, 2016, SOIGA received Plaintiff's Inmate Appeal to Final Review. (Id. ¶ 23.) On July 20, 2016, SOIGA dismissed the appeal because Plaintiff had not provided the "required and/or legible documentation for proper review" and noted that "[a]ny attempt to gather and send documents now would be deemed untimely." (Id.) Thus, Plaintiff "did not properly exhaust his grievance related to the November 2015 incident." (Id. ¶ 24.)

## II. LEGAL STANDARD

Defendant Shaw initially filed a motion to dismiss. (Doc. No. 17.) However, she raised the issue of whether Plaintiff had exhausted his administrative remedies. (Doc. No. 10.) Consequently, the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment. (Doc. No. 22.)

### A. Motion to Dismiss

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure

5

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the

complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B. Motion for Summary Judgment

"When a motion to dismiss is converted into a motion for summary judgment the parties must be given notice of the conversion and an opportunity to present material to the court." Latham v. United States, 306 F. App'x 716, 718 (3d Cir. 2009); see also Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989). The parties have been given a reasonable opportunity to present material relevant to the converted motion. (See Doc. No. 22.)

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is material if it might affect the outcome of the suit under the applicable law,

7

and is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. See id. at 248-49. Thus, where no material fact is in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. See id. at 248. Conversely, where there is a dispute as to an issue of material fact, the moving party must establish that the factual dispute is not a genuine one. See id.

The party moving for summary judgment bears an initial burden of identifying evidence that it believes demonstrates the absence of a genuine issue of material fact. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has carried this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure). With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. See Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical

doubt as to the material facts. See id. at 252; see also Matsushita Elec. Indus. Co., 475 U.S. at 586.

## III. DISCUSSION

Given that Defendant Shaw's motion to dismiss has been converted to a motion for summary judgment by this Court upon notice to the parties, the Court analyzes the same under the summary judgment standard of review. Defendant Shaw argues in her brief in support of her motion that Plaintiff's claims are barred by the applicable statute of limitations, and that they are unexhausted, warranting dismissal. (Doc. No. 20.) The Court addresses each argument in turn.

### A. Statute of Limitations

The Supreme Court has instructed that 42 U.S.C. § 1983 claims are properly characterized as tort actions for the recovery of damages for personal injury, and that federal courts must borrow the statute of limitations governing personal injury actions from the state where § 1983 actions are brought. See Wilson v. Garcia, 471 U.S. 262, 275-76 (1985); Garvin v. City of Phila, 354 F.3d 215, 220 (3d Cir. 2003) (noting that there is a two-year statute of limitations for such actions in Pennsylvania); 42 Pa. Cons. Stat. Ann. § 5524. Additionally, a § 1983 "cause of action accrues when the plaintiff knew or should have known of the injury upon which [his] action is based." See Sameric Corp. of Del. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).

Here, the incident giving rise to Plaintiff's claim occurred on November 25, 2015. He did not file his complaint, however, until three (3) years later, in November of 2018, when he mailed it to the Court for filing.[3] The United States Court of Appeals for the Third Circuit has

---

[3] Plaintiff dated his complaint September 11, 2017. (Doc. No. 1 at 5.) He indicates, however, that he sent his complaint to the Centre County, Pennsylvania, courthouse on that date. (Id. at 6.) According to Plaintiff, he did not receive it back for some time "due to [him] going from

9

held that "the PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies." See Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 603 (3d Cir. 2015). As discussed below, however, Plaintiff did not properly exhaust his administrative remedies with respect to his claim against Defendant Shaw. Moreover, even if Plaintiff were entitled to tolling for the time during which he attempted to pursue his administrative remedies, the record reflects that SOIGA dismissed Plaintiff's appeal on July 20, 2016. (Doc. No. 21 ¶ 23.) Plaintiff, however, did not file his complaint until more than two (2) years later, in November of 2018.

In his opposition brief, Plaintiff contends that he is entitled to equitable tolling of the statute of limitations. (Doc. No. 23-1 at 3.) He maintains that he initially mailed his complaint to the Centre County, Pennsylvania, courthouse and did not receive it back for quite some time due to being transferred. (Id.) Plaintiff states that when he did receive it back, it included a letter from the Centre County courthouse stating that he had filed his complaint "in the wrong court[] and [that the complaint would] not be processed." (Id.) Defendant Shaw, however, argues that Plaintiff should not benefit from equitable tolling because he "neglected to determine, for over a year, whether [his state court] action was properly filed or whether it was moving forward." (Doc. No. 28 at 3.)

Equitable tolling applies "where the plaintiff has been prevented from asserting h[is] claim as a result of . . . extraordinary circumstances." See Kach v. Hose, 589 F.3d 626, 643 (3d

---

institution to institution and the new mail policy implemented by the DOC." (Id.) Under the prison mailbox rule, a filing by an inmate is completed when the complaint or other document is deposited with the prison mailing system. See Houston v. Lack, 487 U.S. 266, 276 (1988). Although Plaintiff dated his complaint September 11, 2017, it was postmarked November 19, 2018 (Doc. No. 1 at 7), and was received at this Court's Scranton courthouse on November 27, 2018 (id.). Accordingly, the Court presumes that Plaintiff deposited his complaint with the prison mailing system for mailing to this Court at some time in November of 2018.

Cir. 2009) (citation omitted). To benefit from equitable tolling, a plaintiff must "exercise due diligence to preserve his or her claim." See Robinson v. Dalton, 107 F.3d 1018, 1023 (3d Cir. 1997). Here, the Court agrees with Defendant Shaw that Plaintiff should not benefit from equitable tolling to render his complaint timely filed. As Defendant Shaw notes, Plaintiff waited over a year from when he asserts he mailed his complaint to the courthouse in Centre County to file his complaint with this Court. In waiting that long to file his complaint with this Court, Plaintiff simply has not demonstrated that he exercised due diligence to preserve his claim. See id.; see also Island Insteel Sys., Inc. v. Waters, 296 F.3d 200, 217 (3d Cir. 2002) ("[I]n waiting nearly three months to refile a substantially similar complaint . . . plaintiffs may not have exercised sufficient diligence in prosecuting this action."). Thus, Plaintiff's complaint is subject to dismissal as time-barred.

### B. Exhaustion of Administrative Remedies

In addition to the statute of limitations barring Plaintiff's instant claims, he also failed to properly exhaust his administrative remedies. Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the

exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. See id. Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to strictly comply with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he

12

was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, cannot excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. See Harris, 149 F. App'x at 59. Furthermore, an inmate cannot avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. See Warman, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." See id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." See id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." See id.

13

Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. See id. at 1860.

Here, Defendant Shaw argues that Plaintiff's grievance record demonstrates that he failed to properly exhaust his administrative remedies prior to filing the instant action. (Doc. No. 21 ¶ 24; Doc. No. 20 at 6-9.) Defendant Shaw has submitted a declaration from Helen Shambaugh, a grievance officer with SOIGA, stating that while Plaintiff did file a grievance regarding the November 25, 2015 incident, he did not timely appeal the initial review response to the Facility Manager. (Doc. No. 21-1 ¶¶ 23-25.) Moreover, Plaintiff's appeal of the Facility Manager's dismissal was rejected by SOIGA for Plaintiff's failure to provide required and/or legible documentation. (Id. ¶ 26.) As noted above, an untimely "or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's mandatory exhaustion requirement. See Woodford, 548 U.S. at 83; see also Spruill, 372 F.3d at 230.

In his brief in opposition, Plaintiff argues that he wrote letters to a Mrs. Bachik and SOIGA regarding the status of his grievance "because [he] never got a response." (Doc. No. 23-1 at 3.) Plaintiff maintains that staff members "made every attempt possible to stonewall [him] in exhausting available remedies." (Id.) Given this, he argues that he has satisfied the exhaustion requirement. (Id.) In support of his argument, Plaintiff has attached a letter he purports to have sent to Ms. Bachik, in which Plaintiff asks to be allowed to continue to proceed on Grievances #612367 and #605366 and attempts to explain the delay in proceedings. (Id. at 5.) This letter, however, is undated and bears no indication that Plaintiff did not simply draft it for the purpose of defeating Defendant Shaw's argument that Plaintiff failed to exhaust his administrative remedies. Furthermore, the letter makes no mention of Grievance #605363,

which, as noted above, was the grievance Plaintiff submitted relating to the November 2015 incident concerning Defendant Shaw.[4] Quite simply, Plaintiff has provided nothing but his own self-serving allegations to support his claim that he tried to exhaust his administrative remedies but was "stonewalled" by staff members.

Consequently, because Plaintiff has only come forth with self-serving allegations suggesting that he attempted to exhaust his administrative remedies, he has not refuted the defense that he failed to properly exhaust his claim against Defendant Shaw. This Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." See Hammonds v. Collins, No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing Brooks v. Am. Broad. Co., 999 F.2d 167, 172 (6th Cir. 1993)). Because the PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements, Defendant Shaw's motion will also be granted on the basis that Plaintiff failed to properly exhaust his administrative remedies as to his claims against her.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Shaw's motion to dismiss (Doc. No. 17), converted to a motion for summary judgment. Plaintiff's motion to appoint counsel (Doc. No. 24) will be denied as moot. An appropriate Order follows.

---

[4] Exhibits attached to Defendant Shaw's reply brief indicate that Grievance #612367 concerned Plaintiff's procedural due process complaints about Ms. Bachik. (Doc. No. 28-1.)